IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

JUNE 1998 SESSION

FILED

July 20, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | NO. 01C01-9707-CR-00276 |
| Appellee, | ) | |
| | ) | DAVIDSON COUNTY |
| VS. | ) | |
| | ) | HON. THOMAS H. SHRIVER, |
| REBECCA CUREVICH, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Aggravated Child Abuse, Child |
| | ) | Neglect) |

FOR THE APPELLANT:

THEODORA A. PAPPAS
Washington Square Building
222 Second Avenue North
Suite 360M
Nashville, TN 37201
(Appeal Only)

JACK A. BUTLER
First American Building
Suite 2395
315 Deaderick Street
Nashville, TN 37238-2395
(Trial Only)

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

KAREN M. YACUZZO
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

VICTOR S. JOHNSON, III
District Attorney General

DIANE S. LANCE
WILLIAM R. REED
Asst. District Attorneys General
Washington Square Building
222 Second Avenue North
Nashville, TN 37201-1649

OPINION FILED: _____

AFFIRMED

JOE G. RILEY,
JUDGE

**OPINION**

The defendant, Rebecca Curevich, appeals her Davidson County jury convictions for aggravated child abuse and child neglect. The defendant contends on appeal that:

> (1) she was unfairly prejudiced by the trial court's refusal to allow the opinion testimony of a police officer;
>
> (2) the evidence presented at trial was insufficient to support her conviction for aggravated child abuse;
>
> (3) she was unfairly prejudiced by the state's improper cross-examination; and
>
> (4) the trial court imposed an excessive sentence.

After a careful review of the record, we AFFIRM the judgment of the trial court.

**I.**

The defendant gave birth to the victim while incarcerated. The defendant and her mother, Paulette Nicholson, agreed that Nicholson should have custody of the child. This informal custody arrangement continued after the defendant was released from her incarceration.

The defendant admitted to having a ten (10) year addiction to the drug, Dilaudid. This addiction continued after the victim was born. The defendant subsequently enrolled in a Methadone treatment program. Part of the treatment program allowed the defendant to take Methadone home for self-medication. The defendant's dosage at the time the offenses occurred was fifty (50) milligrams.

In June 1994, Nicholson left the victim in the defendant's care at approximately 4:00 p.m. in order to visit Nicholson's husband in the hospital. The child was approximately six (6) months old. The defendant's aunt, Brenda

Gower, called to check on the defendant between 10:00 and 10:15 p.m. The defendant did not indicate to her aunt that anything was wrong with the child.

When Nicholson returned at approximately 10:40 p.m., the defendant was sitting at the kitchen table working a puzzle. When Nicholson went into the other room to check on the child, she noticed the child was having trouble breathing. When she picked the child up, Nicholson stated the child turned blue and became limp. Nicholson instructed the defendant to call 911. When the child arrived at the hospital, he was unable to breathe on his own and a tube had to be inserted in his throat. There is no question that the child would have died if he had not received emergency medical care.

The defendant testified that after her mother left, she drank the fifty (50) milligram dose of Methadone and played with the child for approximately forty-five (45) minutes. She stated that on the floor where they played was a can of soda, a pack of cigarettes, an ashtray, a lighter, and her empty Methadone bottle. The defendant testified she cannot remember her aunt calling that night. When she awoke, the defendant said she noticed the child's labored breathing and decided to call 911. The defendant stated that Nicholson arrived home immediately after she decided to call 911.

When the child did not respond to conventional treatment at the hospital, the attending physicians administered Narcan, which counters the effects of narcotics. The child immediately reacted to the Narcan and began to have seizures. The child subsequently tested positive for Methadone. Dr. Jayant Deshpande, one of the doctors who treated the child, testified that a child the weight of the victim would have to ingest at least twenty-eight (28) milligrams of Methadone to cause breathing to cease.

3

**II.**

The defendant's first assignment of error is the trial court erred in refusing to allow Detective Steve Cleek to give his opinion as to whether he thought the child's ingestion of Methadone was accidental.

The trial court conducted a hearing outside the presence of the jury to determine the admissibility of Detective Cleek's testimony. The trial court concluded the detective's opinion was inadmissible and asked the parties if they agreed. Neither side objected to the court's ruling. The defendant, therefore, has waived this issue. *See* Tenn. R. App. P. 36(b).

Regardless of the waiver, the trial court was within its discretion to exclude the testimony. The defendant wanted the detective to state his opinion based upon his investigation of the facts of the case. Witnesses are allowed, with limitations, to testify as to their opinion regarding the ultimate issue. Tenn. R. Evid. 704; State v. Shuck, 953 S.W.2d 662, 668 (Tenn. 1997). However, this rule is tempered by the limitation that no opinion testimony on the ultimate issue is allowed when a jury could readily draw its own conclusions on the matter, unaided by the witness' opinion. Cohen *et al.*, Tennessee Law of Evidence, § 704.2 (3d ed. 1995); Blackburn v. Murphy, 737 S.W.2d 529, 533 (Tenn. 1987). Furthermore, the admission of expert opinion testimony must "substantially assist the trier of fact to understand the evidence or determine a fact in issue . . ." Tenn. R. Evid. 702; McDaniel v. CSX Transp., Inc., 955 S.W.2d 257, 264 (Tenn. 1997).

The detective's experience investigating child abuse cases and his investigation in this case did not allow him to formulate a more informed conclusion than the jury. The jury was apprised of the relevant facts and were fully capable of drawing their own inferences and conclusions without the opinion

4

of Detective Cleek.  The detective's opinion would not substantially assist the jury in determining this issue.

The trial court did not abuse its discretion in excluding this evidence. *See* State v. Shuck, 953 S.W.2d at 669 (holding appellate review is limited to an abuse of discretion standard).  This issue is without merit.

**III.**

The defendant further contends the evidence presented at trial was insufficient to sustain her conviction for aggravated child abuse.  Aggravated child abuse requires the defendant knowingly, other than by accidental means, treat a child under eighteen (18) years of age in such a manner as to inflict injury, or neglect such a child so as to adversely affect the child's health and welfare; and the act of abuse result in serious bodily injury to the child.  Tenn. Code Ann. §§ 39-15-401, 39-15-402(a)(1).

**A.**

When an appellant challenges the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992); Tenn. R. App. P. 13(e).  On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom.  State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  This Court will not reweigh the evidence, reevaluate the evidence, or substitute its evidentiary inferences for those reached by the jury.  State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995).

Furthermore, in a criminal trial, great weight is given to the result reached by the jury. State v. Johnson, 910 S.W.2d 897, 899 (Tenn. Crim. App. 1995).

Once approved by the trial court, a jury verdict accredits the witnesses presented by the state and resolves all conflicts in favor of the state. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). The credibility of witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the jury as trier of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). A jury's guilty verdict removes the presumption of innocence enjoyed by the defendant at trial and raises a presumption of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant then bears the burden of overcoming this presumption of guilt on appeal. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991).

**B.**

The state contended the defendant intentionally administered the Methadone to the child. The defendant asserted, *inter alia*, that while she was asleep, the child crawled to her bottle of Methadone, put the bottle in his mouth, and drank the remainder of its contents. She stated, "there might have been residue in it." The defendant also referred to "other members" of her family who used and had access to Methadone. In her testimony at trial, the defendant accused her mother, Paulette Nicholson, of sneaking into the house while she was asleep and administering Methadone to the child.

The jury obviously discredited the testimony of the defendant. The defendant admitted to possessing fifty (50) milligrams of Methadone before Nicholson left the child in her custody. The defendant testified she, herself, consumed the entire contents of her bottle of Methadone, yet an expert testified the child would have had to ingest at least twenty-eight (28) milligrams of the

6

drug.  The defendant's various explanations of how the victim could have ingested the Methadone strain credulity.  Looking at the evidence in a light most favorable to the state, the evidence is sufficient to support the conviction for aggravated child abuse.

This issue is without merit.

**IV.**

The defendant also contends that she was unfairly prejudiced by questions asked by the assistant district attorney which assumed facts never introduced into evidence.  The state contends the questions were proper under the prior inconsistent statement rule.  *See* Tenn. R. Evid. 613.

The defendant was asked on cross-examination whether she told Dr. Ed Dotson that she was taking one (1) Dilaudid per day in July and August 1994.  The defendant replied, "If I told him that, then, yes ma'am, it is."  The defendant subsequently testified that she was "clean" from March 22, 1994, until the date of the trial.  The state countered by asking the defendant, "Okay.  But you just told me that Ed Dotson -- you told Ed Dotson you were taking one Dilaudid a day in July and August of 1994."  The defendant responded, "Well then, I honestly don't know the answer."  The state never introduced evidence from Dr. Dotson or any other witness that the defendant actually made this admission.

When a witness is examined regarding a prior inconsistent statement, counsel is not required at that time to show the statement or disclose its contents to the witness, but on request must show or disclose it to opposing counsel.  Tenn. R. Evid. 613(a).  To use a prior inconsistent statement to impeach a witness, counsel must have a good faith belief the inconsistent statement was actually made.  Cohen *et al.*, Tennessee Law of Evidence § 613.1 (3d ed. 1995).

7

There is no requirement that counsel introduce the prior statement into evidence.

The testimony of the defendant on her direct and cross-examination was difficult to follow as to exactly when she was in various treatment programs and when she was drug-free. Prior to the prosecutor's first question concerning her prior statement to Dr. Dotson, it is conceded by the state that it is unclear whether she had testified that she had been drug-free in July and August 1994. Thus, it could have been inappropriate at that time to have asked about the prior statement to Dr. Dotson. However, the defendant did testify subsequently that she was drug-free during this time. Clearly, the prior inconsistent statement was proper at that time. Any possible error as to the timing of the first question was harmless. Tenn. R. App. P. 36(b).

The defendant's contention that the questions were improper because they "assumed facts that were not introduced into evidence" is without merit. There is no legal requirement that a prior inconsistent statement be introduced into evidence. Although there must be a factual basis for the question, the defendant has not shown the prosecutor lacked that basis.

Furthermore, there was no objection to either question. The failure to object deprived the trial court and this Court of any opportunity to ascertain the factual basis of the question. The issue is waived. Tenn. R. App. P. 36(a).

This issue is without merit.

## V.

The defendant's final assignment of error is that the trial court erred by imposing a maximum sentence of twelve (12) years for the aggravated child

8

abuse conviction.[1]

## A.  Standard of Review

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness.  Tenn. Code Ann. § 40-35-401(d).  This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances.  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo.*  State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

If no mitigating or enhancement factors for sentencing are present, Tenn. Code Ann. § 40-35-210(c) provides that the presumptive sentence shall be the minimum sentence within the applicable range.  *See* State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991).  However, if such factors do exist, a trial court should start at the minimum sentence, enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors.  Tenn. Code Ann. § 40-35-210(e).  No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record.  State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Leggs, 955 S.W.2d 845, 848 (Tenn. Crim. App. 1997); State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995); *see* Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments.  Nevertheless, should there be no

---

[1] This offense was committed on June 26, 1994, when all forms of aggravated child abuse were Class B felonies.  Effective July 1, 1994, aggravated child abuse of a child six (6) years of age or less was elevated to a Class A felony. 1994 Public Acts, Chapter 978.  The defendant was, therefore, properly sentenced for a Class B felony.

9

mitigating factors, but enhancement factors are present, a trial court may set the sentence above the minimum within the range. Tenn. Code Ann. § 40-35-210(d); *see* Manning v. State, 883 S.W.2d 635, 638 (Tenn. Crim. App. 1994).

## B. Length of Sentence

The trial court imposed the maximum sentence after finding five (5) enhancement factors and no mitigating factors. The enhancement factors found applicable by the trial court are as follows:

> (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, Tenn. Code Ann. § 40-35-114(1);
>
> (2) The victim of the offense was particularly vulnerable because of age, Tenn. Code Ann. § 40-35-114(4);
>
> (3) The defendant had no hesitation about committing a crime when the risk to human life was high, Tenn. Code Ann. § 40-35-114(10);
>
> (4) The felony was committed while the defendant was on parole, Tenn. Code Ann. § 40-35-114(13); and
>
> (5) The defendant abused a position of private trust, Tenn. Code Ann. § 40-35-114(15).

The trial court properly noted that the defendant had previously been convicted of forgery and attempted tampering with evidence. The trial court, therefore, properly applied enhancement factor (1). Additionally, the defendant admitted she was on parole for these crimes at the time the instant offenses were committed. Therefore, the trial court properly applied enhancement factor (13).

The court further found the six-month old victim was particularly vulnerable due to his age. Tenn. Code Ann. § 40-35-114(4). The age of the victim, standing alone, does not justify application of this enhancing factor. State

10

v. Poole, 945 S.W.2d at 96. Although the age of the victim is an element of the offense of aggravated child abuse, this does not necessarily preclude the application of this factor. State v. Walton, 958 S.W.2d 724, 728 (Tenn. 1997). Rather, the trial court should consider: (1) whether, because of age, the victim was particularly unable to resist the crime, summon help, or testify at a later date; (2) whether the victim's age (extremely young or old) is entitled to additional weight; and (3) whether the vulnerability of the victim made the victim more of a target for the offense or, conversely, whether the offense was committed in such a manner as to render the vulnerability of the victim irrelevant. Id.; Poole, 945 S.W.2d at 96-97. The victim was completely unable to resist the lethal dose of narcotics administered by the defendant. Also, because of his age, the six-month old child was unable to call for help and was spared death only by the fortuitous return of his grandmother. The victim's age was properly considered in enhancing the sentence.

The state concedes that Tenn. Code Ann. § 40-35-114(10), that the defendant had no hesitation about committing a crime when the risk to human life was high, was inappropriately applied. Serious bodily injury is an essential element of aggravated child abuse.

Finally, the court found the defendant had abused a position of private trust. Tenn. Code Ann. § 40-35-114(15). The determination that a position of trust exists depends on the nature of the relationship, not on its length or formality. State v. Kissinger, 922 S.W.2d 482, 488 (Tenn. 1996). The parent-child relationship is an obvious example of a position of trust. Id. According to the defendant's testimony, the grandmother did not want to leave the child with the defendant, but did so only after the defendant argued with her. Therefore, the child was entrusted to the care of the defendant who abused this trust. This enhancement factor was properly applied.

11

The record supports the application of enhancement factors (1), (4), (13), and (15) to the defendant's sentence. The erroneous application of an enhancement factor by the trial court does not necessarily lead to a reduction in sentence. State v. Lavender, ___S.W.2d___(Tenn. 1998). The sentence imposed by the trial court was proper.

This issue is without merit.

### C. Alternative Sentencing

The defendant contends that due to her chronic substance abuse, the trial court erred in not considering her for community corrections.

The Community Corrections Act establishes a program of community-based alternatives to incarceration for certain eligible offenders. *See* Tenn. Code Ann. § 40-36-103. A defendant is eligible for participation in a community corrections program if the defendant satisfies several minimum eligibility criteria set forth at Tenn. Code Ann. § 40-36-106(a)(1)-(7). The defendant does not meet the minimum criteria since aggravated child abuse is not a non-violent felony. *See* Tenn. Code Ann. §§ 40-36-106(a)(3), 102(12).

An offender who does not meet the minimum criteria under Tenn. Code Ann. § 40-36-106(a) and is considered unfit for probation due to substance abuse or mental problems may still be eligible for community corrections under the special needs provision of Tenn. Code Ann. § 40-36-106(c). *See* State v. Grigsby, 957 S.W.2d 541, 546 (Tenn. Crim. App. 1997). However, before a defendant may be sentenced pursuant to Tenn. Code Ann. § 40-36-106(c), he or she must be found statutorily eligible for probation. State v. Grigsby, 957 S.W.2d at 546; State v. Staten, 787 S.W.2d 934, 936 (Tenn. Crim. App. 1989).

12

A defendant is eligible for probation if the sentence received by the defendant is eight years or less. Tenn. Code Ann. § 40-35-303(a). The defendant, due to the length of her sentence, is not eligible for probation. Furthermore, a person convicted of aggravated child abuse is precluded from receiving probation. Tenn. Code Ann. 40-35-303(a). Thus, since the defendant is ineligible for probation, she is precluded from community corrections under the special needs provision.

This issue is without merit.

Accordingly, the decision of the trial court is AFFIRMED.

_____
**JOE G. RILEY, JUDGE**


**CONCUR:**


_____
**CURWOOD WITT, JUDGE**


_____
**R. LEE MOORE, JR., SPECIAL JUDGE**

13