MADDIN & PATTERSON, Ex'rs, v. J. M. HEAD et al.

1. CONTRACT. Compensation. Evidence. A physician who, at the request of a patient, agrees for a time to abandon his other practice and devote himself exclusively to the one patient, and does so, rendering unusual services, is not restricted in the amount of his compensation to the usual charges made by physicians charging by the visit, but, in estimating the amount of compensation, the witnesses may take into view the nature of the contract, and the fact that the physician would probably sustain loss in other practice, though his actual loss would not be a proper subject of consideration.

2. SUPREME COURT. Practice. Will not reverse for errors which do not injure the party. This court will not always reverse for errors in the admission of testimony. Where it can be seen that the error has not injured the party, the judgment will not be disturbed. Perfectly strict law and literal accuracy will not be required. The statute forbidding reversals except for errors affecting the merits, should have full force, and strong presumption should be made in favor of the correctness of the judgment below.

FROM SUMNER.

Appeal in error from the Circuit Court of Sumner county. J. C. GUILD, J.

Patterson *v.* Head.

J. J. TURNER for Maddin & Patterson.

G. E. SEAY for Head.

McFARLAND, J., delivered the opinion of the court.

These two actions were brought by the executors of John Patterson's will upon three promissory notes, as to which there is no dispute, their right to recover thereon being conceded. The controversy arises upon pleas of set-off filed in each case, which aver that the plaintiffs' testator, John Patterson, "was indebted to the defendant (James M. Head) by account for medical services during the year 1869, in the sum of $2,500, which he offers to plead as a set-off."

To this the plaintiffs filed replications, in substance as follows, to-wit: That their testator had settled with and paid said James M. Head in full for all medical services up to the 1st of February, 1869, and that said testator did not employ said Head to render medical services to any one but himself, and that the services rendered him, from the 1st of February, 1869, until his death on the — day of October, 1869, were not worth exceeding five hundred dollars ($500), which sum they propose to allow as a credit upon the notes.

The defendants took "issue on the replication" in brief. The plea of set-off and replication were the same in each case, and, by consent, the causes were tried together, the jury finding the amount due, under the plea of set-off, $2,200 without interest. The court refused to grant the plaintiff a new trial, but

rendered judgment in their favor for the balance due on the notes as found by the jury, less $2,200. The plaintiffs took a bill of exceptions, and have appealed in error.

It will be observed that the issue presented was alone as to the value of medical services rendered by Dr. Head. The fact that he was employed and rendered services in attending to the testator from the 1st of February to the date of his death in October, 1869, is admitted by the replication. The plaintiffs produced a receipt in full to the 1st of February, 1869, which seems not to have been controverted; so that the issue was narrowed down to the question as to what was reasonable compensation for the services rendered from that date to the death of the testator in October, 1869. No account was produced or filed by the defendants, and it is not claimed that the plea can be thus sustained. The theory of the defendants is that Patterson, being a man of wealth, was attacked about a year before his death with a violent and fatal disease, and employed Dr. Head to attend him, and that he stipulated as one of the terms of the undertaking that Dr. Head was to give up his other practice and devote himself exclusively to him, remaining with him for a part of the time day and night, and rendering unusual and extraordinary services, his peculiar condition, in his opinion, requiring it, and promising that he would make liberal compensation in view of the extra services and the injury the doctor would thus sustain from the loss of his other practice, and that the services were

rendered accordingly. It is not insisted that the services rendered, at the rates usually charged by the visit, would amount to the sum allowed by the jury, but it is insisted that the charge is reasonable in view of the peculiar contract, and the fact that Dr. Head was compelled for the time to abandon his other practice. A number of physicians, examined by the defendant, say that a contract of the character mentioned was out of the ordinary course of a physician's business and greatly calculated to injure his practice, and that it was difficult for them to estimate the value of such services, but in view of the injury a physician would thus sustain, they think the charge reasonable for the services proven to have been rendered under such contract. The plaintiffs' counsel excepted to the testimony of the physicians, upon the ground that it was, in effect, permitting the defendant, under his plea of set-off, to recover damages for the injury he had sustained to his practice, when no such claim was set up in the plea. The same question was made by asking the court to give to the jury certain instruction marked as No. 14.

Upon a careful examination of the questions upon this point submitted to the physicians who were examined as witnesses, and their answers thereto, and the charge of the Judge submitting this question to the jury, we think there is no substantial error therein. We do not hold that the injury which Dr. Head actually sustained in his practice, either before or after the death of Patterson, by reason of the contract and services in question, should properly form part of his

recovery under his plea of set-off; but, as the ser-·vices rendered could not be properly compensated by .the usual charges, for the reasons given, the witnesses, in estimating what would be reasonable compensation, might properly take into consideration the fact that the Doctor was for the time to give up his other practice and devote himself exclusively to the one patient, and that by such an arrangement a physician ·would probably lose largely in his other practice.    It is clear, and is in fact conceded in argument, that if the amount of compensation had been matter of agree-·ment between the parties, the probable loss of other ·practice would be a proper matter for the doctor, as a prudent man, to consider in fixing the amount he would demand for such services.    That Patterson fully understood this, is, clearly shown in the evidence, and ·it follows that, as the parties failed to agree upon the sum to be paid, the witnesses and the jury, in ·fixing the sum, must take into view such considerations as would probably have operated upon the minds ·of the parties themselves had they undertaken to fix upon the sum by contract.    What Dr. Head was in fact injured in his other practice, was not a proper subject of inquiry.    We think, however, that the witnesses have not undertaken to estimate this, nor were the jury instructed to consider this subject.    They were told, in substance, that speculative damages or loss of practice were not to be considered, but the nature of the contract and service should be considered, and reasonable compensation allowed in view ·thereof.    This was the most material question in the

cause, and we hold that no substantial error was committed in reference thereto.

It is insisted, however, that the court erred in the admission of testimony. First, as to the testimony of W. T. Barr, detailing a conversation with the defendant Head. We find, however, that Barr details this conversation for the purpose of showing that he repeated it to the testator Patterson, and giving Patterson's reply thereto, which was clearly competent and pertinent. In this view, there was no error in its admission. There are other portions of the testimony excepted to, which, strictly considered, are not competent; as, for instance, the general understanding in the neighborhood that Dr. Head was devoting his time exclusively to the testator Patterson, and that certain persons were offended at him for this reason. It will be found, however, that the fact that Dr. Head did for a time give his exclusive attention to the testator, that it was so understood in the neighborhood, and that others did complain of it, was fully proven by witnesses detailing conversations to that effect with Patterson himself, and this without objection, if, indeed, it was subject to objection. And further, when we remember that under the issue submitted the only question was, what was reasonable compensation? and that the charge distinctly informed the jury that they were to fix this sum in view of the nature of the contract and the services performed, without reference to speculative damages or loss of practice, we think it can be seen that the errors referred to did not affect the result. Perhaps that provision

of our statutes, which but announces a sound common law principle, forbidding this court to reverse except for errors affecting the merits, has not always been properly considered. Where the error is such as to deprive the party of that fair and impartial trial which the law guarantees, then we have no discretion; but if perfectly strict law and literal accuracy be in all cases required, then comparatively few judgments could stand, and delay and expense would in a great measure defeat the ends of justice. Strong presumption in favor of the correctness of judgments below should prevail in this court.

The verdict upon the merits is well sustained. There is ample evidence showing that Patterson fully understood the nature of his contract with Dr. Head, that it was entered into at his urgent and repeated solicitations, and that he fully expected he or his representative was to make liberal compensation.

While the sum fixed by the jury was liberal, it is sustained by the testimony, and the judgment will be affirmed.