Natalie Ann BLACKBURN,
Plaintiff-Appellee,

v.

Charles H. MURPHY and Rachel D.
Murphy, Defendants-Appellants.

Supreme Court of Tennessee,
at Nashville.

Aug. 31, 1987.

John L. Norris, Russell Heldman, Hollins, Wagster & Yarbrough, Nashville, for defendants-appellants.

Thomas A. Travaglini (on appeal), Dick Eason (at trial), Law Offices of Bart Durham, Nashville, for plaintiff-appellee.

OPINION

DROWOTA, Justice.

The issues presented in this case are whether the admission of certain nonexpert or lay opinion testimony constituted error, and if so, whether it was harmless error. This action arose from an automobile accident in Nashville. Plaintiff, Natalie A. Blackburn, brought this suit to recover damages from Defendants, Charles H. Murphy and Rachel D. Murphy, due to the alleged negligence of Rachel Murphy. Defendants asserted the defense of unavoidable accident due to the weather conditions prevailing on the morning of the accident.

During the night and early morning of February 28, 1984, a light snow fell in Nashville, leaving the streets and highways in the area hazardous. Plaintiff was a passenger in a car driven by her husband, Kennard Blackburn. As they were driving to work along Interstate 40 West between 6:00 and 6:30 a.m., Mr. Blackburn was traversing an interstate overpass, following a car driven by a witness in this case, Yvonne Parks, when he saw a truck fishtail ahead of himself and Mrs. Parks. At about the same time, he and Mrs. Parks moved from the left lane in which they were traveling into the right lane to avoid the truck. As they changed lanes they collided lightly and then pulled over into the emergency parking lane on the far right of the interstate. Little property damage and no personal injuries resulted from this collision; however, while Mr. Blackburn and Mrs. Parks were examining their vehicles for damage, a car driven by Mrs. Murphy came around the curved overpass, lost traction, and slid into the rear of Mr. Blackburn's car, causing extensive damage to Mr. Blackburn's car and injuring Mrs. Blackburn, who had remained in the Blackburn automobile after the first accident. Mrs. Blackburn was taken to a local hospital for emergency treatment of a neck injury.

On February 20, 1985, Plaintiff commenced this action to recover damages

from Defendants, alleging in her Complaint that Mrs. Murphy had been negligent in that she had driven too fast for the road conditions and lost control of her car. Defendants' Answer raised the defense of unavoidable accident and denied that Mrs. Murphy had driven too fast for the road conditions. A jury trial was held on January 22 and 23, 1986.

The first witness to testify was Mr. Blackburn. On direct, he stated that he had been driving in the left hand lane at about 25 to 30 mph when he and Mrs. Parks bumped lightly after changing lanes. The weather was cold with some flurries falling. Mr. Blackburn testified that conditions required that a driver exercise caution. The overpass on which he and Mrs. Parks collided was built on a downhill curve. While he and Mrs. Parks were examining their cars for damage, he saw Mrs. Murphy briefly out of the corner of his eye as she approached. He estimated her speed at about 50 mph. He saw her car slide violently into the rear of his own, crushing his trunk, and then swing around his car to come to rest facing against the direction of traffic on the interstate. On cross-examination, he reiterated the need for using caution due to the weather conditions, noting that ice patches had formed on the interstate that day. He admitted that he had observed other accidents in this area of the interstate while he was at the scene and saw other cars fishtail. At one point in his testimony, he noted the common knowledge that ice forms more quickly on bridges and overpasses but he denied that any ice had formed along this section of interstate; nevertheless, he could not say what had caused the truck to fishtail in front of him and Mrs. Parks or why he had collided with Mrs. Parks.

Mrs. Parks was called to testify for Plaintiff, stating that she had been traveling to work on this morning when Mr. Blackburn bumped into the rear of her car. They had pulled over into the emergency lane to check for damage. While standing on the side of the road, Mrs. Murphy's automobile struck Mr. Blackburn's car. She could not recall or make any estimate of Mrs. Murphy's speed. On cross-exami-

nation, she stated that the roads were very slick and driving was hazardous, noting that the overpasses were especially dangerous and that this particular overpass not only curved but sloped downhill. She testified that she and Mr. Blackburn had collided because they slid on ice on the overpass. She witnessed a number of accidents while waiting at the scene of the accident, estimating that perhaps twenty cars had been involved in several accidents during the period she remained at the scene. The entire area was very slick. She stated that she and Mr. Blackburn had both been traveling slowly when they bumped and that all the cars she saw seemed to be exercising caution. When asked again about Mrs. Murphy's speed, she stated that she did not remember how fast she was going and remarked that the "main thing that stands out in my mind is the impact itself." Continuing on cross, after Mrs. Parks reiterated that road conditions were slippery, the following exchange then occurred:

Q. [Mr. Norris:] And I think I talked to you Monday and I think what you told me was that as far as you could recall, this was an accident that couldn't have been avoided?

A. [Mrs. Parks:] Right. The road conditions were such that, you know.

MR. EASON: Your Honor, I'm going to object for the record. I don't believe the witness can offer an opinion. And I know on Cross-Examination it's a little bit different than Direct where you can lead and say just about anything you want to say. But I don't believe the witness ought to offer an opinion as to the ultimate cause or the reason for the accident, whether it was unavoidable or avoidable. Certainly not by cross and lead.

THE COURT: I'll overrule your objection. Go ahead.

BY MR. NORRIS;

Q. Okay, finish your answer.

A. What was the question? I'm sorry.

Q. Okay, now the question I believe was, did you tell me as far as you can recall this was an accident that couldn't be avoided?

A. Okay, yes, sir, it could not have—it was a slick day. Everyone was driving with caution and it was just, you know, one of those things. There were accidents all over town that day.

Q. Even though people were driving with caution they were still having accidents?

A. Yes, sir.

This is the challenged portion of the testimony at issue in this case.

Following Mrs. Parks' testimony, Plaintiff testified on her own behalf. She stated that after she and her husband's minor collision with Mrs. Parks, she chose to remain in the Blackburn car. She did not see Mrs. Murphy approach and recalled only that a loud crash occurred, shaking the car violently and causing her to injure her neck when she was thrown around the interior of the car by the impact. She described the weather conditions on cross-examination as getting worse during their drive to work, with flurries falling and roads slick. She saw other cars experiencing difficulty on the interstate. Although her husband was traveling only 25 to 30 mph, he had trouble stopping his car. While at the scene of the accident, she saw several cars fishtail on the same section of the interstate.

The only witness to testify for Defendants was Mrs. Murphy. She described road and weather conditions as icy and getting more hazardous during the course of the morning. When she traversed the overpass, she stated that she was traveling at 15 to 20 mph; the rear-end of her car suddenly spun as she approached Mr. Blackburn's car on the downhill slope of the curve, causing her to strike his car. She stated that she slid on ice that had formed on the overpass. The accident happened unexpectedly. When she got out of her car, she slipped on ice. While at the accident site, she saw other cars slide and stated that conditions were very slick. Following her accident with Mr. Blackburn, her car was struck by another car.

Other testimony not relevant to the issue before this Court was also elicited from these and other witnesses. The case was submitted to the jury, which deliberated for approximately an hour and twenty minutes before returning a verdict for Defendants. Motions for a New Trial and for Judgment Notwithstanding the Verdict were overruled by the trial court and the Plaintiff's Notice of Appeal was timely filed. Finding that defense counsel had induced lay opinion testimony that was improperly admitted into evidence on the ultimate issue of whether the accident was unavoidable or was caused by the negligence of Mrs. Murphy, the Court of Appeals reversed the judgment and remanded the case for a new trial. The Middle Section determined that Mrs. Parks was not qualified to give an opinion and that she had engaged in speculation as to the cause of the accident. Defendants' Application for Permission to Appeal was subsequently granted by this Court; we now partially reverse the judgment of the Court of Appeals and reinstate the judgment of the trial court.

We start with the "general proposition [that] the ordinary witness must confine his testimony to a narration of facts based on first-hand knowledge and avoid stating mere personal opinions." Paine, *Tennessee Law of Evidence* (1974), § 168, at p. 186. This " 'rule excluding testimony of nonexpert witnesses [from giving] their conclusions or opinions regarding the facts in issue is broad and of general application.' " *Wilson v. Nashville, Chattanooga & St. Louis Railway*, 16 Tenn.App. 695, 706, 65 S.W.2d 637, 643 (1933) (citation omitted). The obvious purpose served by the general rule is to preserve the primary fact-finding role of the jury, since " '[i]t is the function of the witness to state evidentiary facts and the function of the jury to draw such conclusions as the facts warrant.' " *Id.*, 16 Tenn.App. at 705, 65 S.W.2d at 643 (citation omitted). Moreover, admission of opinion testimony on the ultimate issue involved in a case can be especially problematic, particularly that of a lay witness:

> "Deductions from facts belong to the jury, and when the examination extends so far as to substitute the opinion of the witness, upon the very issue in controversy, for that of the jury, the province

of that tribunal is unwarrantably invaded. Necessity alone is the ground upon which [opinion] testimony rests, and the moment this necessity ceases, the exception to the general rule, which requires facts and not opinions from witnesses, ceases also. 'Hence ... whenever the circumstances can be fully and adequately described to the jury, and are such that their bearing on the issue can be estimated by all men, without special knowledge or training, opinions of witnesses, experts, or otherwise, are not admissible.'"

*Bruce v. Beall*, 99 Tenn. 303, 313–314, 41 S.W. 445, 448 (1897) (citation omitted).[1]

Nevertheless, exceptions to this general rule precluding admission of lay opinion testimony do exist. Nonexpert opinion testimony can be admissible when "such testimony describes observed facts in the only way in which they can be clearly described." *National Life & Accident Ins. Co. v. Follett*, 168 Tenn. 647, 662, 80 S.W.2d 92, 98 (1935). The admission of lay testimony is thus limited to those circumstances

> "[w]here facts perceived by the senses are numerous, and it is difficult to describe them adequately to the jury, and the conclusion or inference to be drawn from such facts is simple and within the range of common experience, and the witness can relate what he has seen more accurately and more easily by stating his conclusion than by attempting to detail the [evidentiary] facts, [then] the conclusion or inference of the witness is admissible."

*Reed v. Allen*, 522 S.W.2d 339, 343 (Tenn. App.1974) (citations omitted). Upon proper foundation, where necessary, lay opinion is commonly admitted on whether a person is intoxicated, *see, e.g., Daniels v. State*, 155 Tenn. 549, 553–554, 296 S.W. 20, 21–22

(1927), or regarding recognition or identification of a sound, *see, e.g., Holder v. State*, 119 Tenn. 178, 210, 104 S.W. 225, 233 (1907) (sound of horse's hooves). Distances and speed are regularly estimated by lay witnesses; even a person's physical condition may be a subject of lay opinion testimony on occasion; the value of property may be given by a lay witness. *See generally* Paine, *supra*, §§ 168–172, at pp. 186–189. These examples are not intended to constitute an exhaustive catalogue, but merely indicate the nature of the opinion testimony that a lay witness may be qualified to give. Regardless, the application of such exceptions is circumscribed by the ultimate issues in the case. The more directly such opinion testimony bears on the ultimate issue, the less likely it is to be considered admissible. Even "[t]he opinion [of an expert] is not to be received at all upon an ultimate issue of fact, if the jury is qualified to pass upon such an issue." *National Life & Accident Ins. Co. v. Follett*, *supra*, 168 Tenn. at 659, 80 S.W.2d at 97. Thus, if "[t]he subject of [a non-expert's] inference [from the facts is] well within the range of common knowledge," *id.*, 168 Tenn. at 663, 80 S.W.2d at 98, then a question calling for a conclusion of a lay witness or an answer offering an opinion of a lay witness on an ultimate issue is generally improper because "[w]e thus would have ... witnesses with mere conjectural or speculative opinions dogmatically settling an issue the jury were called on to try." *Cumberland Telegraph & Telephone Co. v. Dooley*, 110 Tenn. 104, 109, 72 S.W. 457, 458 (1902) (citation omitted). *See also Union Railway Co. v. Hunton*, 114 Tenn. 609, 629–630, 88 S.W. 182, 187–188 (1905).

■ In this case, while Mrs. Parks could clearly state whether the roads on which she drove were hazardous or icy, she should not have been permitted to state her opinion as to whether the accident could or could not ultimately have been avoided.

---

**1.** *But see City of Columbia v. C.F.W. Construction Co.*, 557 S.W.2d 734, 741–742 (Tenn.1977) (citing Fed.R.Evid. 704 and holding that necessary expert opinion is not objectionable merely because it embraces an ultimate issue). Obviously, the result reached in *Bruce v. Beall*, *su-*

*pra*, disallowing expert opinion, would no longer obtain under *C.F.W. Construction Co.*, and to that extent it has been overruled; however, the rationale of *Bruce v. Beall* quoted above continues to be applicable to lay opinion testimony.

She was in no better position to make this inference than the members of the jury. The defense counsel's question was directed to the very issue about which the lawsuit was being tried. No purpose was served by allowing her to give her opinion. The relevant facts were easily related and the case involved a matter of common experience about which we are fully confident that the jury could readily draw its own conclusions unaided by any opinion testimony. The road conditions on the interstate, the weather, the experiences of three drivers on the roads on the day of the accident, what the witnesses observed of other vehicles in the area on that day, and sufficient additional factual details were adequately described in the course of the testimony of the four occurrence witnesses at trial. We can discern no necessity upon which Mrs. Parks should have been permitted to state her conclusion regarding whether the accident at issue was or was not unavoidable. This was the issue for the jury to decide from all the evidence presented. "We think the ... question and answer ... constituted an invasion of the province of the jury and were incompetent." *Wilson v. Nashville, Chattanooga & St. Louis Railway, supra,* 16 Tenn.App. at 707, 65 S.W.2d at 644.

> "While it is true the line between non-expert opinion which is competent and that which is incompetent is not well defined, we can see no reason why the present case should be placed in the class where such testimony has been adjudged competent. Every fact constituting an element in the opinion of those witnesses was capable of being presented to the jury."

*Cumberland Telegraph & Telephone Co. v. Dooley, supra,* 110 Tenn. at 110, 72 S.W. at 459. Consequently, as the Court of Appeals correctly concluded, the admission of this testimony did constitute error, but that conclusion does not by itself end the analysis.

Under Rule 36(b), T.R.A.P., an error does not of itself necessarily require reversal; a judgment "shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." In a recent criminal case, this Court was called upon to decide whether an error was harmless or prejudicial. We stated that

> "[a]n error is harmless or prejudicial depending on the extent to which the proof in the record exceeds the standard necessary to sustain a jury decision.... Thus, the more convincing the evidence, the less prejudicial the error."

*State v. Bobo,* 727 S.W.2d 945, 955–956 (Tenn.1987). *See also Painter v. Toyo Kogyo of Japan,* 682 S.W.2d 944, 949 (Tenn. App.1984). In *Berke v. Chattanooga Bar Association,* 58 Tenn.App. 636, 654, 436 S.W.2d 296, 304 (1968), the Court of Appeals stated that "[t]he admission of improper evidence of a fact in issue is harmless where the verdict or judgment is supported by sufficient competent evidence ... or where the fact is undisputed." (Citations omitted) Some version of the principle of harmless error has long been applied by Tennessee courts and our courts have applied it to analogous circumstances to those found in this case. *See, e.g., Austin v. City of Memphis,* 684 S.W.2d 624, 631 (Tenn.App.1984); *James v. Ross,* 51 Tenn App. 413, 422, 369 S.W.2d 1, 5 (1962); *Cook v. Blytheville Canning Co.,* 210 Tenn. 414, 420, 359 S.W.2d 828, 831 (1961); *Union Railway Co. v. Hunton, supra,* 114 Tenn. at 631, 88 S.W. at 188; *Cumberland Telegraph & Telephone Co. v. Dooley, supra,* 110 Tenn. at 112, 72 S.W. at 459. The soundness of the reasoning of this Court in *Maddin v. Head,* 69 Tenn. 664, 670 (1878), has not been eroded during the ensuing 109 years, especially as it is applicable to a case in these circumstances:

> "Where the error is such as to deprive the party of that fair impartial trial which the law guarantees, then we have no discretion; but if perfectly strict law and literal accuracy be in all cases required, then comparatively few judgments could stand, and delay and expense would in great measure defeat the ends of justice. Strong presumption in favor of the correctness of judgments below should prevail in this court."

When the record in this case is considered as a whole, we have no difficulty concluding that ample convincing evidence exists to sustain the verdict of this jury. We are confident that the jury recognized Mrs. Parks' opinion for what it was and that the members of the jury followed the instructions of the trial court in reaching the verdict. This is not a complex, unusual, or otherwise confusing case; it involves the very type of factual determination to which jurors ordinarily apply their common sense, daily experiences, and their judgment of credibility. We have not been shown that the error in admitting Mrs. Parks' opinion testimony is prejudicial within the meaning of Rule 36(b), T.R.A.P., and on this record the jury was certainly justified in returning a verdict for Defendants upon a finding that the accident was unavoidable. "The testimony complained of by plaintiffs in this issue, even if erroneously admitted by the trial court, under the circumstances of this case, is, in our opinion, harmless. *See* T.R.A.P. 36(b)." *Austin v. City of Memphis, supra,* at 631.

Accordingly, we reverse the judgment of the Court of Appeals to the extent that it determined that the error was prejudicial; the judgment of the trial court is reinstated. The costs are taxed to Plaintiff. The case is dismissed.

HARBISON, C.J., and FONES, COOPER and BROCK, JJ., concur.