IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 15, 2015

**STATE OF TENNESSEE v. SARA ANNE NEUMANN**

**Appeal from the Criminal Court for Hamilton County**
**No. 293476    Rebecca J. Stern, Judge**

_____

**No. E2015-00945-CCA-R3-CD – Filed May 4, 2016**

_____

The defendant, Sara Anne Neumann, was charged with one count of driving under the influence ("DUI"). The defendant filed a motion to suppress the evidence from the traffic stop, arguing that the arresting officer did not have reasonable suspicion that she was committing a traffic violation to justify the stop. The trial court agreed and granted the motion to suppress. The State now appeals, arguing that the officer's observation of the defendant and his radar gun constituted reasonable suspicion. Following a thorough review of the record, the briefs of the parties, and the applicable law, we conclude that the evidence preponderates against the findings of the trial court. We reverse the judgment of the trial court and remand for proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed;**
**Case Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., J., joined. ROGER A. PAGE, J., not participating.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Neil Pinkston, District Attorney General; and Kristen Spires, Assistant District Attorney General for the Appellant, State of Tennessee.

Lloyd A. Levitt, Chattanooga, Tennessee, for the Appellee, Sara Anne Neumann.

**OPINION**

## FACTS AND PROCEDURAL HISTORY

At the motion to suppress hearing, Officer Eaton Shultz testified that he worked for the Signal Mountain Police Department. On the evening of the stop, he was parked on the side of the road "[r]unning radar" when he observed the defendant driving through the curves of the mountain "at a high rate of speed." Officer Schultz then used his radar gun to record the defendant's speed. He clocked her driving on a straighaway, after she had passed through the curves, and he recorded her speed at fifty-four miles per hour in a thirty-five miles per hour speed zone. Officer Schultz turned on his headlights but did not turn on his blue lights, and he pulled out behind the defendant. Before he activated his blue lights, the defendant pulled her car to the side of the road. Officer Schultz pulled in behind the defendant and turned on his blue lights. When he approached the defendant's car, she apologized to him and said that she knew she was speeding. Officer Schultz testified that he was not involved in calibrating the radar in his police car.

The trial court issued a written order granting the motion to suppress. The court found that because Officer Schultz did not testify to any training that he received regarding the use of the radar gun or have any knowledge of the radar calibration in his vehicle, the court would "completely disregard[] the radar measurement." The court noted that Officer Schultz did not testify that he saw the defendant speeding but only that he observed her driving on the uphill curves of the mountain at a high rate of speed, which then prompted him to measure the defendant's speed with his radar detection device. The court found that "[t]aking uphill curves quickly is not equivalent to speeding, especially on mountain-ascending, perhaps speed-limiting, curves." As a result, the court found that there was not a sufficient reason for any traffic stop. The court also found that the defendant was seized for the purposes of the Fourth Amendment when Officer Schultz pulled behind her vehicle and activated his blue lights.

The trial court later issued an order dismissing the charges against the defendant. The State filed a timely notice of appeal, and we proceed to consider the claim.

## ANALYSIS

The State argues that Officer Schultz's personal observation of the defendant, along with his radar indication, gave Officer Schultz reasonable suspicion to stop the defendant for speeding. The defendant responds that the trial court correctly refused to consider the radar recording and correctly found that Officer Schultz's observation that the defendant was driving at a high rate of speed was not equivalent to violating the speed limit.

A trial court's factual determinations in a suppression hearing will be upheld on appeal unless the evidence preponderates otherwise. *State v. Odom,* 928 S.W.2d 18, 23 (Tenn. 1996). Questions regarding the credibility of witnesses, the weight or value of the evidence, and determinations regarding conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. *State v. Talley,* 307 S.W.3d 723, 729 (Tenn. 2010). "The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Williamson,* 368 S.W.3d 468, 473 (Tenn. 2012) (quoting *Odom,* 928 S.W.2d at 23). The trial court's application of the law to the facts is reviewed de novo. *State v. Carter,* 16 S.W.3d 762, 765 (Tenn. 2000).

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution provide protection for individuals against unreasonable searches and seizures. *State v. Day*, 263 S.W.3d 891, 900-01 (Tenn. 2008). "[A] warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

One exception to the warrant requirement exists "when a police officer makes an investigatory stop based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). "The level of reasonable suspicion required to support an investigatory stop is lower than that required for probable cause." *Day*, 263 S.W.3d at 902. Reasonable suspicion is "a particularized and objective basis for suspecting the subject of a stop of criminal activity." *Binette*, 33 S.W.3d at 218. The reasonableness of the stop is assessed from an objective perspective. *Day*, 263 S.W.3d at 903. Courts should consider the totality of the circumstances surrounding the stop, which "includes, but is not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders." *State v. Bridges*, 963 S.W.2d 487, 492 (Tenn. 1997) (quoting *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992)). "A court must also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him." *Watkins*, 827 S.W.2d at 294.

Here, Officer Schultz testified that he observed the defendant driving at "a high rate of speed," and the Rules of Evidence permit even lay witnesses to estimate speed. *Blackburn v. Murphy*, 737 S.W.2d 529, 532 (Tenn. 1987). This observation prompted Officer Schultz to employ his radar detecting device. Tennessee Code Annotated section 24-7-124(a) provides that in any judicial proceeding in which the results of a radar device used to measure the speed of a motor vehicle is being introduced to prove the speed of

3

the vehicle or the conduct of the driver, the "results shall not be admissible for such purposes unless the law enforcement officer operating the device has been trained pursuant to guidelines established by the National Highway Traffic Safety Administration or the Tennessee peace officer standards and training (POST) commission." The statute only requires that an officer be trained pursuant to appropriate guidelines; it contains no requirement that the officer have knowledge of the radar's calibration. As a result, we conclude that the trial court erroneously excluded Officer Schultz's testimony about the radar reading on the grounds that he had no knowledge of the calibration of his radar device, but we agree that the evidence was inadmissible to show that the defendant was speeding because Officer Schultz did not testify that he was trained pursuant to either of the guidelines specified by the statute. When the defendant reached the top of the mountain, Officer Schultz turned on his headlights and went to pull his vehicle onto the road. The defendant immediately and voluntarily pulled her vehicle off of the road, and her vehicle was stopped and placed in park before Officer Schultz turned on his blue lights. Based on Officer Schultz's testimony that he observed the defendant driving at a high rate of speed and the behavior of the defendant after Officer Schultz turned on his headlights, we conclude that Officer Schultz had reasonable suspicion to stop the defendant. As a result, we conclude that the evidence preponderates against the findings of the trial court. We reverse the judgment of the trial court and remand for proceedings consistent with this opinion.

## CONCLUSION

Based on the foregoing analysis, the judgment of the trial court is reversed and the case is remanded for proceedings consistent with this opinion.

_____
JOHN EVERETT WILLIAMS, JUDGE

4