IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 10, 2020 Session

## CONNIE ELLIS v. MIKE K. MODI

**Appeal from the Circuit Court for Davidson County
No. 15C3816  Joseph P. Binkley, Jr., Judge**

————————————————————

### No. M2019-01161-COA-R3-CV

————————————————————

Following a jury trial, the plaintiff was awarded a substantial verdict against the defendant for both compensatory and punitive damages.  After the defendant's motion for a new trial was denied, he appealed to this Court.  The defendant now argues, among other things, that the trial court erroneously excluded his expert psychologist from testifying at trial and, further, that the trial court erroneously allowed certain prejudicial evidence against him to be admitted.  For the reasons stated herein, we vacate the jury's verdict and the trial court's judgment entered in this matter and remand the case for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Donald Capparella, Tyler Chance Yarbro, Kimberly Macdonald, James Walker, Derrick Lee O'Dell and Julie-Karel Elkin, Nashville, Tennessee, for the appellant, Mike K. Modi.

Christopher Kim Thompson, Nashville, Tennessee, Daryl R. Fansler, Knoxville, Tennessee, and Mary Francis Parker, Charlotte, North Carolina, for the appellee, Connie Ellis.

## OPINION

## BACKGROUND AND PROCEDURAL HISTORY

This case concerns an alleged sexual assault that occurred in the early morning hours of February 28, 2015 while the Plaintiff/Appellee in this litigation, Connie Ellis ("Ms. Ellis"), a caregiver employed by Family Staffing Solutions, worked in the home of

the Defendant/Appellant Mike Modi ("Mr. Modi"). At the time of the alleged incident, Mr. Modi allegedly required home care assistance following his hospitalization for serious injuries sustained in a recent motor vehicle accident. The record further indicates that, while in the hospital for treatment for the motor vehicle accident, Mr. Modi was diagnosed with stage four lymphoma.

Litigation commenced over the claimed sexual assault at Mr. Modi's home when Ms. Ellis filed a complaint against him on October 16, 2015, asserting claims for assault, battery, and intentional infliction of emotional distress, seeking compensatory damages not to exceed $750,000. Mr. Modi filed an answer to the complaint on January 12, 2016, wherein he prayed that the action against him be dismissed.[1]

Ms. Ellis later filed an amended complaint, seeking punitive damages and increasing her ad damnum to $6,000,000. According to the amended complaint, Ms. Ellis averred she struggled to get away from Mr. Modi during the alleged sexual assault which she alleged continued for a period of approximately three hours. Mr. Modi denied this specific allegation in his answer to the amended complaint and generally characterized Ms. Ellis' case against him as a "fabricated story." Subsequently, pursuant to an agreed order, the trial was scheduled to begin on February 11, 2019.

Prior to trial, motions in limine were filed by the parties in an attempt to limit the proof to be considered by the jury in this matter. For her part, Ms. Ellis filed a motion to exclude, or alternatively limit, the testimony of psychologist Dr. David Price ("Dr. Price"). Mr. Modi intended to offer Dr. Price's expert testimony to counter Ms. Ellis' assertions that she had developed post-traumatic stress disorder ("PTSD") as a result of the alleged assault. Ms. Ellis argued that Dr. Price's proposed testimony would not substantially assist the jury, and further, she complained about the fact that Dr. Price had not conducted an in-person examination of her. The trial court ultimately deferred ruling on whether or not it would permit Dr. Price to testify until trial.

For his part, Mr. Modi requested that the court exclude testimony from another employee of Family Staffing Solutions about an "alleged prior bad act." Namely, Mr. Modi wanted to exclude proposed testimony from Jerri Lynn Cain Briley ("Ms. Briley") that Mr. Modi had previously requested Ms. Briley to put lotion on his groin area when she was caring for him. Mr. Modi also moved in limine to exclude certain personal health records from coming into evidence and to exclude any reference to particular health information about him. Among other things, he sought to exclude evidence pertaining to a prior herpes diagnosis, as well as any evidence related to a penile implant.

---

[1] In addition to requesting dismissal of the complaint filed against him, Mr. Modi's answer outlined what he submitted was his physical condition in the weeks leading up to the claimed incident. In relevant part, he noted that he required twenty-four hour care, "suffered excruciating pain, vertigo, weakness in his limbs," and had discovered he was also suffering from cancer.

The trial court denied Mr. Modi's efforts in limine to exclude this evidence from consideration.

The ensuing jury trial took place over multiple days in February 2019. When Ms. Ellis testified, she described in detail the particulars of the alleged sexual assault, including her contention that the episode had lasted "about three hours." Mr. Modi, in his testimony, denied that he had attacked Ms. Ellis, claiming the night and early morning of February 28, 2015 had been as any other day. Of course, apart from the testimony of the parties, much other testimony and evidence was entertained at trial, including evidence which had been the subject of Mr. Modi's objections in his pre-trial motions in limine. Among other things, for example, the jury heard evidence from Ms. Briley, who, like Ms. Ellis, had been a caregiver for Family Staffing Solutions. Ms. Briley testified that, prior to the incident in question, on February 13, 2015, she went to Mr. Modi's home to assist in his care. On that date, according to Ms. Briley's testimony, while she was rubbing lotion and oil on Mr. Modi's feet, legs, and thighs due to his diabetes, he asked her to also apply it to his groin area complaining he had some chafing.

Because the trial court had deferred ruling on Ms. Ellis' pre-trial request to exclude Mr. Modi's psychology expert, Dr. Price, from testifying, the issue became a heated point of contention at trial. Although the trial court commented following the voir dire of Dr. Price that he was "highly qualified," that he had "specialized knowledge that would substantially assist the trier of fact," and that he had testimony that would be relevant, it ultimately ruled that he should not be allowed to testify before the jury. The court cited concerns of confusion by the jury and appeared to express additional concern as to whether Dr. Price would be able to give testimony to a reasonable degree of medical or scientific certainty.

The jury ultimately found in favor of Ms. Ellis on her claims for battery and intentional infliction of emotional distress and awarded her over $7,600,000 in compensatory damages. Further, the jury subsequently determined that Mr. Modi should be assessed an additional $2,000,000 in punitive damages. On March 4, 2019, the trial court entered its "Judgment Order," which approved the jury verdict in its entirety.

Thereafter, on April 3, 2019, Mr. Modi filed a motion for a new trial and other relief. Among other things, Mr. Modi argued that the jury's verdict was the result of passion and prejudice, and he contended that the trial court had erred in its evidentiary rulings as to the exclusion of Dr. Price, the allowance of testimony from Ms. Briley, and the admission of prejudicial evidence pertaining to his health. The motion also requested that, absent the granting of a new trial, the court must reduce the judgment to $6,000,000, the amount in Ms. Ellis' ad damnum clause, and grant a substantial remittitur.

On May 23, 2019, the trial court entered an order on Mr. Modi's motion for new trial and other relief. Although the trial court denied Mr. Modi's request for a new trial, it

did conclude that the jury's verdict should be modified to reflect an award of $4,000,000 in compensatory damages and $2,000,000 in punitive damages. This modification was made in light of the fact that the verdict had exceeded the amount sought in the ad damnum. In concluding its order, the trial court noted that it would be making findings of fact and conclusions of law "setting forth the reasons for its approval of the jury's award of punitive damages." Thereafter, on May 31, 2019, the trial court entered an order setting forth its reasons for approving the $2,000,000 punitive damage award. This appeal followed.

## ISSUES PRESENTED

Mr. Modi raises a number of issues for our review in his appellate brief,[2] which we rephrase as follows:

1. Whether the trial court abused its discretion and committed reversible error when it excluded the testimony of Dr. Price.
2. Whether the trial court abused its discretion in allowing Ms. Briley to testify about a prior incident and in admitting certain evidence pertaining to Mr. Modi's health.
3. Whether the jury's award for lost wages and loss of future earning capacity was the result of passion, caprice, and prejudice requiring a new trial.
4. Whether this Court should grant a remittitur.

## DISCUSSION

We begin our discussion by turning to the propriety of the trial court's decision to exclude Dr. Price from testifying at trial before the jury. As stated earlier, Mr. Modi intended to offer Dr. Price, a psychologist, as an expert witness in order to counter Ms. Ellis' assertions that she had PTSD as a result of the alleged assault. Part of Dr. Price's contemplated testimony was also to include a critique of the methodology utilized by Ms. Ellis' own psychology expert on that issue.

Here, the trial court openly acknowledged at trial that Dr. Price had "some good opinions," that he was "a very bright individual," and that he was "qualified . . . to give opinions without a doubt." The court subsequently remarked again that Dr. Price was "highly qualified," that he had "specialized knowledge that would substantially assist the trier of fact," that he understood the issues before the court well, and that his testimony

---

[2] Ms. Ellis also raises a jurisdictional concern in the "Statement of the Issues" section of her brief, contending that Mr. Modi failed to timely file this appeal. Ms. Ellis previously raised her jurisdictional concern pursuant to a motion to dismiss the appeal, a motion that has already been denied. As noted in a July 26, 2019 per curiam order from this Court, we determined the appeal by Mr. Modi was timely.

- 4 -

would be relevant. Notwithstanding these favorable comments about Dr. Price and the worth of his proposed testimony, the trial court ultimately excluded Dr. Price from testifying upon referencing Rule 403 of the Tennessee Rules of Evidence. To support its ruling, the trial court cited concerns of potential jury confusion. The trial court also appeared to express concern, based on Dr. Price's testimony in voir dire about his opinions appearing in expert interrogatory disclosures, that he would not be able to provide testimony to a reasonable degree of certainty.

As a general matter, the decision whether to admit or exclude evidence is a discretionary decision. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992) ("In Tennessee admissibility of evidence is within the sound discretion of the trial judge."); *see also Seffernick v. Saint Thomas Hosp.*, 969 S.W.2d 391, 393 (Tenn. 1998) (noting that questions regarding the admissibility, relevancy, and competency of an expert's testimony are left to the trial court's discretion). Although we presume that a trial court's decision is correct when reviewing its exercise of discretion, discretionary decisions nonetheless "require a conscientious judgment, consistent with the facts, that takes into account the applicable law." *White v. Beeks*, 469 S.W.3d 517, 527 (Tenn. 2015). "A trial court abuses its discretion by applying an incorrect legal standard or reaching an illogical or unreasonable decision that causes an injustice to the complaining party." *Id.*; *see also Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) ("A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.").

It is elementary that not all evidence that is logically relevant need be admitted. Indeed, Rule 403 of the Tennessee Rules of Evidence, which was referenced by the trial court here, specifically provides as follows: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. This Court has previously described the balancing process required under this rule as follows:

> [The process] begins by recognizing that the rules of evidence favor the admissibility of relevant evidence, and that relevant evidence is admissible unless otherwise provided. Thus, excluding relevant evidence under Tenn. R. Evid. 403 is an extraordinary remedy that should be used sparingly, and persons seeking to exclude otherwise admissible and relevant evidence have a significant burden of persuasion.
>
> Each Tenn. R. Evid. 403 question must be decided on its own facts, and the trial court must be careful not to usurp the function of the jury in

the process. The balancing process under Tenn. R. Evid. 403 is a two-step process. The trial court must first balance the probative value of the evidence sought to be excluded against the countervailing factors. After the court has engaged in the balancing analysis, it may then exercise its discretion to determine whether the evidence should be excluded if the prejudice substantially outweighs the probative value of the evidence.

During the first phase of the analysis, the court must determine whether the countervailing factors in Tenn. R. Evid. 403 "substantially outweigh" the probative value of the evidence. The trial court has no discretion to exclude evidence under Tenn. R. Evid. 403 unless it concludes that the probative worth of the evidence is substantially outweighed by one or more of the countervailing factors. Thus, a trial court should not exclude evidence under Tenn. R. Evid. 403 when the balance between the probative worth of the evidence and the countervailing factors is fairly debatable.

*White v. Vanderbilt Univ.*, 21 S.W.3d 215, 227 (Tenn. Ct. App. 1999) (internal citations omitted).

Having carefully reviewed this issue, we are of the opinion that the trial court's decision to exclude Dr. Price from testifying was in error. First, as to the trial court's cited concern that Dr. Price would not provide testimony that his opinions were to a reasonable degree of certainty, the trial court's understanding of the record was clearly erroneous. Contrary to the trial court's concern, Dr. Price did answer the question of whether his opinions were to a reasonable degree of certainty. When questioned at trial as to whether he had made a diagnosis to a reasonable degree of scientific certainty, Dr. Price testified as follows in his voir dire: "I have."[3]

As to the trial court's invoking of Rule 403 of the Tennessee Rules of Evidence and cited concern for potential jury confusion, we are of the opinion that the trial court erred to the extent it concluded that the probative value of Dr. Price's testimony was substantially outweighed by any of the countervailing considerations outlined in Rule 403.[4] The trial court's concern for jury confusion emanated from a fact that the parties have spilled much ink over in this case—that Dr. Price did not conduct a personal examination of Ms. Ellis. There has been much debate over this issue, with Ms. Ellis

---

[3] When pressed by a member of this Court's judicial panel at oral argument about whether Dr. Price testified in his voir dire that his opinions were held to a reasonable degree of certainty, counsel for Ms. Ellis admitted this point, stating, "He did."

[4] As noted by Mr. Modi in his appellate brief, the trial court never specifically articulated such a conclusion. However, that appears to be the understanding that informed the court's ruling. Indeed, immediately before announcing its ruling that Dr. Price would be excluded, the trial court commented as follows: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of confusion of issues."

contending that Dr. Price, who is licensed in South Carolina, cannot render an opinion about her absent an in-person examination.[5] The trial court evidently accepted Mr. Modi's argument that no such absolute prohibition existed,[6] because as already noted, the court based its decision to exclude Dr. Price on potential confusion concerns attendant to his proposed testimony, not on his inability or incompetency to testify. Specifically, the trial court expressed apprehension about having to explain *why* Dr. Price did not examine Ms. Ellis despite a request to do so. Although no one appears to question that it was permissible for Ms. Ellis to refuse a request by Dr. Price to examine her under the particular facts of this case,[7] the trial court was concerned that this would be too much for the jury to digest when this information was brought out during Dr. Price's examination or through a clarifying instruction submitted to them. In relevant part, the trial court stated as follows:

> [T]he problem that we're going to have is the fact that -- that -- and Plaintiff's counsel is going to do this on cross-exam, that Dr. Price did not have an opportunity to examine the Plaintiff because Plaintiff's counsel wouldn't let him. I mean -- and that's just a fact. That is the way it came down. And now, but why, is the issue of . . . . We can't just leave it at that. It's got to be -- there's got to be a why, why did Plaintiff's counsel do that.
>
> And then -- then we're back to an instruction to the jury about why.

The court then went on to discuss all of the details it speculated it might need to explain to the jury about why Ms. Ellis had been able to deny Dr. Price the ability to examine her,[8] ultimately stating, "I think it's too much for them, and it -- and it takes away the focus of what the case is about." As the court explained, "Dr. Price will be excluded because his testimony, although relevant -- because we have to explain why and how it was possible for . . . Plaintiff's counsel to refuse to allow their client to be interviewed by Dr. Price."

---

[5] The trial court did not specifically rule in Ms. Ellis' favor on this proposition, but it bears noting again that Dr. Price's testimony was not offered to be limited to his professional opinions about the plaintiff. Mr. Modi also intended to offer Dr. Price to provide an opinion as to the methodology of the plaintiff's expert. That particular critique, of course, never initially contemplated an examination of the plaintiff.

[6] As discussed in the trial court and in the briefing in this Court, South Carolina's regulation concerning psychologists' ethics specifically adopts the American Psychological Association ("APA") Code of Ethics "as the code of ethics for individuals licensed." S.C. Code Regs. 100-4. As evidenced by the extensive discussion of the APA ethical guidelines in the record, there is no absolute prohibition under such authority in providing an opinion in the absence of an individual examination.

[7] Ms. Ellis had previously been examined by another expert of Mr. Modi's that he subsequently decided not to offer at trial and Ms. Ellis objected to a second examination.

[8] Among other things, the trial court discussed a need to get into the details of the scheduling order that had governed litigation in the trial court.

Respectfully, we do not share the court's concern, certainly not to the extent that would warrant the exclusion of Dr. Price's testimony. We note that prior to Dr. Price's voir dire, the trial court had contemplated crafting some type of instruction to the jury on this issue, but at the conclusion of voir dire, it appeared to believe that any instruction submitted to the jury would be unduly burdensome. It is unclear to us why the court would have needed to go into the specific legal detail that it speculated would need to accompany a clarifying instruction to the jury. In our view, assuming it felt an instruction was warranted, we do not know why the trial court would have needed to go any further than communicating to the jury that the plaintiff was not legally required to submit to an in-person examination by Dr. Price under the circumstances of this case. Yet, even if the trial court was of the opinion that a more fulsome or intricate explanation was necessary, we fail to see how the trial court's implicit conclusion—that the risk of confusion attendant to such an explanation substantially outweighed the probative value of Dr. Price's testimony—is supportable here.

As we have already noted, "excluding relevant evidence under Tenn. R. Evid. 403 is an extraordinary remedy that should be used sparingly, and persons seeking to exclude otherwise admissible and relevant evidence have a significant burden of persuasion." *Id.* (internal citations omitted). Here, Dr. Price's proposed testimony was highly probative of whether Ms. Ellis suffered PTSD as a result of the alleged attack on her and would have included, among other things, a critique of the methodology of Ms. Ellis' expert. The trial court's own comments support the fact that Dr. Price had "specialized knowledge that would substantially assist" the jury, and yet, the jury was foreclosed from considering such expertise due to what was, in our view, an unwarranted fear of jury confusion. Certainly, any confusion generated by an instruction of why Ms. Ellis had refused an examination by Dr. Price would be in the hands of the trial court, and again, it is unclear to us why the court would have needed to go into the excessive legal detail about which it contemplated. Nevertheless, to the extent that any confusion might somehow attach to an instruction offered by the trial court about why Ms. Ellis was permitted to refuse an examination by Dr. Price, we must again stress that exclusion under Rule 403 is an extraordinary remedy. In balancing the probative value of Dr. Price's proposed testimony with the risk of potential jury confusion, we fail to see how the question is even a close one. Again, the high probative value of the testimony is clear; the risk of any confusion on the part of the jury is a much more attenuated proposition in our view. Yet, even assuming that these competing considerations were more on par with one another, we note that "a trial court should not exclude evidence under Tenn. R. Evid. 403 when the balance between the probative worth of the evidence and the countervailing factors is fairly debatable." *Id.* It was clear error to exclude Dr. Price from testifying.

It was also error to allow the jury to consider the other evidence about which Mr. Modi complains on appeal. As noted earlier, Mr. Modi moved pre-trial to exclude testimony from Ms. Briley about a prior incident in which he had asked Ms. Briley to put

lotion on his groin area. He also had moved pre-trial to exclude evidence pertaining to a prior herpes diagnosis and penile implant. The trial court denied Mr. Modi's efforts, holding that the probative value of such evidence and testimony was not substantially outweighed by any resulting prejudicial effect and that the proof was relevant to Mr. Modi's credibility. On appeal, Mr. Modi argues that the trial court's allowance of this evidence ran afoul of Rule 403 and, as to the testimony of Ms. Briley, also ran afoul of Rule 404(b).

As to Ms. Briley's testimony, which Mr. Modi has argued does not necessarily describe ill conduct, Ms. Ellis took the position in this case that Ms. Briley's account "would tend to show among other things that Modi did sexually assault Plaintiff which he denies." The upshot of this argument involves a suggestion that Mr. Modi's request of Ms. Briley to apply lotion was for the purpose of sexual gratification and, therefore, this tends to prove that he acted out in a sexual attack against Ms. Ellis. In other words, if he allegedly acted improperly with one caregiver for purposes of sexual gratification as sought to be conveyed by Ms. Briley, he must have acted improperly sexually with Ms. Ellis. We agree with Mr. Modi that Ms. Briley's testimony was improperly utilized for propensity evidence. Rule 404(b) of the Tennessee Rules of Evidence provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b).

We likewise agree with Mr. Modi that all of the admitted evidence about which he complains should have been barred under Rule 403. It bears emphasizing that the issue in this case centers on whether a sexual assault occurred on Ms. Ellis. As to the evidence that Mr. Modi had previously been diagnosed with herpes and had a penile implant, it appears to be Ms. Ellis' contention that this evidence is relevant to contradict Mr. Modi's alleged portrayal of himself as a non-sexual person. However, as Mr. Modi has pointed out on appeal, the evidence simply showed that, as of 2009, there was evidence that Mr. Modi had been diagnosed with herpes and that, in 2001, he had a penile implant installed. This evidence is clearly remote to counteracting any portrayal of Mr. Modi as a non-sexual person in 2015 during the wake of his recovery from his car wreck and lymphoma diagnosis, and in our opinion, unnecessarily casts a risk of unfair prejudice or confusion of the pivotal issue before the trier of fact. Any marginal relevance this evidence may have arguably had was clearly substantially outweighed in our view by the countervailing considerations in Rule 403.

It has been suggested by Ms. Ellis on appeal, however, that the evidence pertaining to Mr. Modi's herpes diagnosis and penile implant was "fair game" in this case because these topics were broached first by Mr. Modi at trial. We disagree. Instructive is the Tennessee Supreme Court's discussion in *State v. McGhee*, 746 S.W.2d 460 (Tenn. 1988). At issue in that case was the admissibility of a prior conviction. In relevant part, the Supreme Court discussed the matter as follows:

At the subsequent jury-out hearing the issue was developed. The trial judge held the conviction admissible and made a clear and definitive ruling. The accused then took the stand, and his counsel brought out the conviction on direct examination without waiting for it to be introduced on cross-examination by the State.

The Court of Criminal Appeals held that appellant had waived the issue of the trial judge's ruling by proceeding in this fashion. In this particular case and on this record we are of the opinion that the Court of Criminal Appeals was in error. The trial judge had clearly ruled that the prior conviction was admissible. In our opinion it was not necessary for counsel further to object to that ruling. After the ruling had been made, clearly and unequivocally, in our opinion the issue was sufficiently preserved for further review on appeal without the making of any further objection. Of course, had the appellant not brought out the conviction on direct examination, the State might not have pursued the matter on cross-examination. The admissibility of the conviction, however, had been determined; and the correctness of that ruling had been preserved as an issue.

*State v. McGhee*, 746 S.W.2d 460, 463 (Tenn. 1988) (internal footnote omitted).

In this case, Mr. Modi objected to the disputed evidence pre-trial. Further, he received a definitive ruling from the trial court holding that the evidence to which he objected would be admissible at trial. Under such circumstances and in light of the instruction in *McGhee*, Ms. Ellis' argument on this point is without merit.

Although we have identified several evidentiary errors on the part of the trial court, the mere identification of errors by an appellate court does not automatically translate into the setting aside of a judgment. *See Blackburn v. Murphy*, 737 S.W.2d 529, 533 (Tenn. 1987) ("[A]n error does not of itself necessarily require reversal."). "The erroneous admission or exclusion of evidence is subject to harmless error analysis." *Goodwin v. Hanebis*, No. M2017-01689-COA-R3-CV, 2018 WL 4145889, at *4 (Tenn. Ct. App. Aug. 29, 2018). Indeed, our rules of appellate procedure specifically provide as follows: "A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b).

In our opinion, the exclusion of Dr. Price alone justifies a new trial. In determining whether the exclusion of testimony was harmless error, we consider, among other things, the importance of the testimony and the overall strength of the case.

- 10 -

*Hatfield v. Allenbrooke Nursing & Rehab. Ctr., LLC*, No. W2017-00957-COA-R3-CV, 2018 WL 3740565, at \*22 (Tenn. Ct. App. Aug. 6, 2018). We must determine whether the exclusion of testimony more probably than not influenced the jury's verdict. *See Beeks*, 469 S.W.3d at 529. Here, we are of the opinion that the exclusion of Dr. Price more probably than not influenced the jury's verdict. Ms. Ellis asserted she had PTSD as a result of the alleged attack, and Mr. Modi was attempting to offer Dr. Price to counter this allegation. Dr. Price's testimony was no doubt vitally important to the defense in this case, and as noted earlier, the trial court even remarked that he had "specialized knowledge that would substantially assist the trier of fact." By way of Dr. Price's exclusion, however, the claim of PTSD from the alleged attack went wholly unchallenged, a point Ms. Ellis' counsel emphasized during closing argument before the jury. In our view, such an emphasis by counsel is not irrelevant to determining whether harmful error exists. *See In re Estate of Smallman*, 398 S.W.3d 134, 153 (Tenn. 2013) ("[T]he reviewing court should examine the degree to which the wrongly admitted evidence was emphasized by its proponent during trial as an indicator of its likely prominence in the minds of the jurors, noting in this regard whether the evidence was mentioned by counsel in opening statement or closing argument."). Because the exclusion of Dr. Price more likely than not influenced the jury's verdict, we vacate the jury's verdict and the trial court's judgment, and remand the case for a new trial.[9]

## CONCLUSION

For the reasons stated herein, the jury's verdict and the trial court's judgment are vacated, and the case is remanded for a new trial and any other further proceedings consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE

---

[9] All other issues not specifically addressed herein are pretermitted.